LUTHER KOUNTZE

*v.*

THE PROPRIETORS OF THE MORRIS AQUEDUCT COMPANY, GEORGE B. SMITH, CARNOT B. MEEKER and GUY MINTON.

Where, upon an order to show cause why an injunction shall not issue, the facts upon which the equity invoked must rest, are explicitly denied by responsive answers, a preliminary injunction, except in cases of peculiar hardship, will be denied.

On order to show cause why an injunction shall not issue to stay
proceedings in condemnation &c., heard on bill, maps and
affidavits, and answers, maps and affidavits.

The bill alleges that the complainant owns and occupies
several hundred acres of land in Morris and Passaic counties,
which he designs to improve and use for country residences;
that a portion of his land adjoins property of the Proprietors
of the Morris Aqueduct Company, and upon it exist springs
and streams of water which are capable of being used to beautify
his property and enhance its value; that the aqueduct com-
pany to aid it in its duty of supplying the town of Morristown
with water, desired to acquire the water of those streams and
utilize springs upon its own lands by conducting them
into the streams of the complainant and through and by those
streams to its settling basins and reservoirs; that, with this
object in view, it deliberately entered upon the lands of the
complainant, without his permission, and, at points, dug out and
completely filled up portions of the beds of his streams, con-
ducting the water through covered tile drains, and thus destroyed
the natural appearance of his land, which clearly manifested its
fitness for the purposes aforesaid, to which he designed to devote
it; that after those trespasses the aqueduct company applied to
a justice of the supreme court for the appointment of commis-
sioners in condemnation proceedings under the statute entitled
"An act for the construction, maintenance and operation of water
works for the purpose of supplying cities, towns and villages of
this state with water," approved April 21st, 1876 (*Rev. p. 1365*),
to appraise the value of a designated portion of the complainant's
land to be taken, and the damages to other parts of his land
which would be occasioned by laying and maintaining a tile
drain not more than six inches in diameter, four feet below the
surface of the land, protected by a surface drain on each side of
it, designed to prevent surface water from reaching the drain
and contaminating the spring water flowing through it; that
commissioners were appointed and viewed the premises in
obedience to the statutory requirement, before making their

award, and found there the changes wrought by the defendant's trespassers, which were of such character that the commissioners were unable to ascertain the original appearance of the land and the advantages of the natural water-courses to it; that the defendant company denies having made certain changes which the complainant insists that it did make, and that the commissioners cannot, by the testimony of witnesses, obtain a satisfactory conception of the natural appearance of the complainant's land. The bill prays that the defendant company may be enjoined from further prosecution of its condemnation proceedings, and that the commissioners may be restrained from making their award until the complainant's premises shall be restored, by the defendant company, to their natural condition and be viewed in that condition, and that the defendant company may be restrained from continuing to maintain its pipe drains and the altered streams upon the complainant's land, which divert the waters from their natural courses.

By its answer, supported by several affidavits, the defendant company avers that the complainant's land in question lies at an outskirt of his domain a mile and a half from his dwelling-house, a half mile from any other dwelling on his land and a quarter of a mile from a public highway, and that it is a deep hollow and swamp, covered with briers, brush and trees, and has never been put to any beneficial use by the complainant and is at least a mile from any beautifying improvements made by him; that the defendant company is the owner of land on the east, south and west of the land in question; that upon its land to the east there are several springs, which, in state of nature, yielded a small rivulet, which ran upon the complainant's land for a short distance and then out of its southerly boundary upon the defendant company's land and then back to the complainant's land again, and, further on easterly, again upon the defendant's land; that in order to secure a full flow from its springs on the east, uncontaminated by surface drainage, the defendant company dug down to them, and by means of several covered tile drains, laid four or five feet below the surface of the earth, conveyed the water to the bed of the rivulet in the complainant's land

and, the drain at that point being some three feet below the surface of the bed of the rivulet, entered upon the complainant's land and deepened the bed of the rivulet there, which descended as it ran westerly, from three feet at the boundary of complainant's land to nothing at seventy-five feet westerly from that boundary and, finding that the sides of the excavation, by reason of the depth for the first twenty feet, through the influence of frost or surface wash, were apt in time to fall in, for that distance continued its tile drain upon the complainant's land and filled in the bed of the stream over it; that for four hundred feet the rivulet, being constantly enlarged by tributaries, ran through the complainant's land southwesterly in its natural state, until it crossed the boundary into land of the defendant company; that upon its land south of the complainant's property the defendant company by other drains, from springs upon its land there, increased the volume of the stream, and to facilitate the running of the water, straightened and deepened the channel until in a straight line it again entered the complainant's land, and by that straightening process it may have cut off from the complainant a few feet of the stream, as the complainant insists, made by a bend running into his land easterly of the point where the straightened stream now enters it; that at the extreme southwesterly corner of the complainant's premises a small rivulet from the defendant company's land, the water of which can be discharged through a pipe one inch in diameter, entered the complainant's property and ran northerly fifty or sixty feet to the main stream, and by means of a little drain, in part constructed across a corner of the complainant's land, the rivulet was entirely diverted from the complainant's property; that otherwise than in the particular stated, the complainant's property was undisturbed; that all these changes are readily discernible upon the ground, except perhaps the cutting off of the bend, and whether a bend was in fact cut off the defendant company doubts, but nevertheless admits and, prior to the filing of the bill, at the time of the view by the commissioners, did admit to the commissioners, for the purposes of the condemnation, according to the complainant's assertion of the fact; that all these changes were

made in the summer of 1893, nearly two years prior to the commencement of the condemnation proceedings, when the relations between the complainant and the defendant company were amicable and they were negotiating for a sale of the rights which the company now seeks by condemnation, and in the presence of the overseer and workmen of the complainant and not clandestinely; that the changes were not made in contemplation of condemnation proceedings, nor with intent to embarrass those proceedings; that the changes are visible and were readily ascertainable by the commissioners when they viewed the premises, and they have benefited the complainant in the proceedings in condemnation by adding to the volume of the water in the stream; that until the bill in this case was filed, and until after the commissioners' view was had at the expense of the defendant company, the complainant failed to indicate any desire that the property should be restored to its former condition; that such restoration would be expensive and would not be productive of any practical use in the condemnation proceedings; that if made in good faith it is doubtful whether the complainant would be satisfied with it and would not dispute its accuracy in a prolonged litigation.

The three commissioners in condemnation, who are made defendants, answer that their view of the lands was satisfactory to them; that they understood that they were to regard the change in the stream at the bend referred to as having been made by the defendant company in manner insisted upon by the complainant; that the changes in the bed and course of the stream "were very slight and that they had no difficulty in seeing and understanding just how and where the stream ran in its natural condition and the quantity of water naturally running and the natural appearance of the ground;" that the changes will not create any difficulty in their reaching a proper estimate of the value of the land and rights taken and the damage caused by the proposed works to the complainant.

*Mr. Thomas N. McCarter* and *Mr. Cortlandt Parker*, for the complainant.

*Mr. John O. H. Pitney* and *Mr. Henry C. Pitney, Jr.*, for the defendant company.

Kountze *v.* Morris Aqueduct Co.

THE CHANCELLOR.

The relief which the complainant seeks by its bill is from the effect of deliberate trespasses, which, he claims, is the transformation of the appearance of his land so that it misleads, and will mislead, those who officially view it in course of condemnation proceedings, as to the real value of the property and rights to be taken. The implication from the bill is that the trespasses immediately preceded the proceedings in condemnation, as though designed to prejudice them and give the aqueduct company an undue advantage, but that feature is eliminated by the explicit statement in the company's answer, that the trespasses preceded the condemnation nearly two years and were committed while friendly negotiations were pending for the purchase of the rights and property desired by the company. The company admits that its trespasses were deliberate, but it denies that the effect of the trespasses was or is to transform the appearance of the complainant's land so that its natural condition and advantages, as discernible by view prior to the trespasses, are not now manifest on view, and, by particular description of the character and extent of the trespasses, demonstrates the probable truth of its denial. In this denial it is also supported by the answer of the defendant commissioners.

It is needless to discuss the merit of the equity claimed, for, by this denial, so far as the present application is concerned, the case is reduced to one of mere trespass, without feature to invoke the interposition of a court of equity.

The facts upon which the equity must rest being explicitly denied by responsive answers, a preliminary injunction will not ordinarily be issued. The exception to that rule is where withholding the injunction will deprive the party of all relief in case he be finally successful, or subject him to some irreparable injury or peculiar hardship. I do not perceive danger of such a result in this case, for if the damages in the condemnation should be affected injuriously to the complainant by fraud of the defendant company which cannot be defeated in those proceedings, I have little doubt as to the power of this court, on final hearing, to ascertain what the just sum to be paid should be and

to compel the defendant company to pay its excess over the commissioners' award. But the danger of such an event in the present condemnation proceedings is reduced to a minimum by the conditions that the defendant is alert to detect fraud, and the commissioners are empowered by the law under which they act to hear the parties interested and take evidence, and are not required to depend alone upon their view of the premises.

Upon this consideration I will discharge the order to show cause and deny the application for a preliminary injunction.